## EGBERT *v.* BARRETT.

1. SALES—BREACH OF CONTRACT—WHETHER INFECTED BEANS MERCHANTABLE FOR THE JURY.

    In an action for the breach of a contract for the purchase of a quantity of merchantable Brazilian black. beans, rejected by defendant because he claimed they were not merchantable, the question as to whether the beans tendered, admittedly infected by weevil to the extent of eight per cent., were merchantable, *held*, for the jury.

2. APPEAL AND ERROR—APPELLANT MAY NOT COMPLAIN OF HEARSAY TESTIMONY OF OWN WITNESS.

    Plaintiffs' counsel may not complain that the answer of his witness to a question asked by him was based on hearsay, since he could easily have shown whether she was testifying from knowledge or hearsay.

3. SALES—SAMPLES—IDENTITY.

    The testimony of a business associate of the broker who made the sale of the beans, together with the markings on the samples sent to defendant for his inspection, *held*, to sufficiently identify the samples with the shipment as to render admissible in evidence defendant's testimony as to the result of his inspection.

4. SAME—EVIDENCE—ADMISSIBILITY.

    Testimony in behalf of defendant showing that plaintiffs had bought the beans of importers as of "fair average quality," and had later been awarded damages because they were not found to be of the quality specified, *held*, competent as bearing on the condition of the beans to the extent to which they were weevil infected.

5. APPEAL AND ERROR—CURING ERROR.

    If the exhibition to the jury of a bottle containing beans and live weevil had any tendency to prejudice the plaintiffs' case, the testimony of one of plaintiffs' expert witnesses, to whom the exhibit was shown, explaining the difference between the weevil's work while confined in a bottle with a limited number of beans and the manner

in which it worked unconfined and on larger quantities, rendered it harmless.

Error to St. Clair; Tappan (Harvey), J.    Submitted April 4, 1923.    (Docket No. 30.)    Decided June 4, 1923.

Assumpsit by John P. Egbert and Lucian J. Dirig, copartners as Egbert & Dirig, against Clair H. Barrett for breach of a contract for the purchase of certain beans.    Judgment for defendant.    Plaintiffs bring error.    Affirmed.

*James A. Muir,* for appellants.

*Shirley Stewart,* for appellee.

MCDONALD, J.    This action is brought to recover damages for breach of contract growing out of the sale of a shipment of Brazilian black beans.    Plaintiffs are engaged in the business of buying and selling beans and other commodities in the city of New York.    The defendant now lives in Port Huron, but at the time of the transaction in question was in business in Detroit, where he owned an elevator and bought and sold beans.    On the 10th day of May, 1917, he entered into a written contract with the plaintiffs for the purchase of about 2,500 bags of Brazilian black beans of good merchantable quality. At the time the contract was made the beans were on shipboard in transit from Brazil to New York.    When they arrived, at his request, the defendant was furnished with samples for inspection.    On the 9th of June, 1917, the beans were tendered to the defendant and a sight draft with the bill of lading attached was sent to his bank at Detroit.    He rejected the beans and refused to honor the draft.    The plaintiffs were compelled to resell at a total loss of

$5,569.77. To recover their loss this suit was begun.

The defendant resists plaintiffs' action for the reason, as he claims, that the beans were not of good merchantable quality, but were infected by weevil and weevil bores to such an extent as to render them unmerchantable. At the conclusion of the testimony the plaintiffs moved for a directed verdict for the reason that by the undisputed evidence it had been established that they had fulfilled the contract, that they had tendered the quantity and quality of the beans specified, and had suffered damages in the sum of $5,569.77 by reason of defendant's breach. The motion was overruled and the case submitted to the jury. The verdict was no cause of action. The plaintiffs have brought the case to this court by writ of error.

In 79 assignments of error the plaintiffs present questions relating to the admission and rejection of evidence, the charge of the court and the refusal to direct a verdict. Did the court err in refusing to direct a verdict for the plaintiffs? By written stipulation counsel had agreed on the measure of damages, and on the trial the defendant conceded that if plaintiffs were entitled to a verdict, it should be in the sum of $5,569.77. The sole question in issue was, whether in the fulfillment of their contract the plaintiffs tendered to the defendant a good merchantable quality of beans. That question the court submitted to the jury. Counsel for the plaintiffs says that the evidence was undisputed that the beans tendered to the defendant were of good merchantable quality, and that there was nothing for the jury to pass on. We do not so read the record.

Mr. Kidd, a New York importer, was a witness for the plaintiffs. He testified that all shipments of Brazilian black beans contain weevil, and that their

merchantability "would depend entirely upon the extent of the weevil cut." It was practically conceded that the beans in question were eight per cent. "wormy." The government report introduced by the plaintiffs showed that fact. There was other testimony of like effect. Plaintiffs offered evidence tending to show that such beans were of good merchantable quality. Defendant offered evidence to the contrary. Thus, there was presented a question for the jury unless, as plaintiffs claim, the government inspection was conclusive as to their merchantability. The government inspector of imported foods and drugs tested these beans before they left the dock in New York. His report shows that they were "eight per cent. wormy," but that "they were found to meet the requirements of the food and drug act." The most that can be claimed by the plaintiffs for this report is that it shows that Brazi'an beans eight per cent. wormy are wholesome and fit for human consumption. This is evidence of their merchantability, but it is not conclusive. We are not advised that any government official has undertaken to define the term "good merchantable quality," for the bean trade, and it would not matter if he had. Unless defined in their contract or by statute, the parties are governed by the understanding of the trade as to the meaning of that term. As to what effect an eight per cent. weevil infection would have on the merchantability of the beans in question, the witnesses were not agreed. It became a question for the jury. The court did not err in submitting it to them.

Was there error in the admission or rejection of evidence? It is claimed that the court erred in receiving in evidence the results of defendant's inspection of the beans, because the samples which he examined were not identified with the shipment. It

appears by the record that it is the custom of the trade in New York that when sales of this kind are made the purchaser is notified of the arrival of the merchandise at the port, and samples are sent by an official inspector for the purchaser's examination. At this time, Mr. Kuhlman was an official inspector. The samples which defendant received were sent to him by Kuhlman. At the time of the trial Kuhlman was an inmate of an insane asylum and his testimony was not available to show that the samples were from the shipment purchased by the defendant. The samples received were marked as follows:

"May 24, 1917, To Clair H. Barrett, 2500 bags black beans. Ex. Steamer Dakotan. B & D. From George H. Kuhlman, official inspector and weigher."

It was shown that the marks "B & D," "Steamer Dakotan," applied to the shipment in question. The samples were procured for the defendant by Mr. Waggaman, a New York broker, who made the sale. At the time of the trial Mr. Waggaman was dead, but Miss Drout, his stenographer and business assistant, was called as a witness by the plaintiffs. On direct-examination she was asked the following question:

"Q. What did you do when the shipment came in?
"A. There were samples drawn by certified weigher expressed to Mr. Barrett, and also part of them looked at by Mr. Waggaman, and then those samples were expressed to Mr. Barrett. The samples were drawn at Mr. Barrett's request."

Counsel for plaintiffs says that Miss Drout's knowledge was based on hearsay. She was his witness. The information she gave was in answer to his question. He could easily have shown whether she was testifying from personal knowledge or hearsay. This witness was more than a stenographer. She

testifies that she did everything in connection with the office, made sales, closed deals and had Mr. Waggaman's power of attorney. We think her testimony, together with the markings on the samples, sufficiently identified them with the shipment as to permit the introduction in evidence of the defendant's inspection.

Over plaintiffs' objection the court permitted the defendant to show that the plaintiffs purchased this shipment from Bush & Daniels, importers of New York city, as of "fair average quality," and afterwards recovered $1,240.09 damages on an arbitration award because the beans were found not to be of the quality specified. This testimony was competent as bearing on the condition of the beans, the extent to which they were weevil infected. Mr. Kidd, testifying for the plaintiffs, said: "Brazilian beans that are not over two per cent. weevil cut are a 'fair average quality.'" The results of the arbitration inquiry disclosed that the plaintiffs were there contending that beans were over two per cent. weevil cut. The testimony complained of was properly admitted.

Complaint is also made that the court erroneously permitted defendant's counsel to exhibit to the jury a bottle containing beans and live weevil. The exhibit was shown to one of the plaintiffs' expert witnesses during his cross-examination. He testified the weevil found in the bottle was the same type of weevil to be found in Brazilian black beans. He explained the difference between its work while confined in a bottle with a limited number of beans, and the manner in which it worked unconfined and on larger quantities. If, of itself, the exhibition had any tendency to prejudicially affect the plaintiffs' case, the explanation of the witness rendered it harmless.

We have examined and considered all of the other assignments as to the admission of testimony and find

in them no reversible error; nor do we find any error in the charge of the court.     In some respects it was more favorable to the plaintiffs than they had a right to expect.     It clearly explained the claims of the parties, and on the whole was a fair and correct presentation of the law applicable to the facts in the case.

As the record discloses no reversible error, the judgment of the circuit court is affirmed, with costs to the defendant.

WIEST, C. J., and FELLOWS, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.